551 P.2d 962

**Charlotte HUGHES, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Alice Nedelec (Alice's House of Real Estate), Respondent Employer.**

**No. I CA–IC 1422.**

Court of Appeals of Arizona,
Division 1,
Department C.

June 22, 1976.

Rehearing Denied Aug. 19, 1976.
Review Granted Sept. 21, 1976.

Robert Morrison, Sierra Vista, for petitioner.

Greg L. Folger (former Chief Counsel), by Calvin Harris, The Industrial Commission of Ariz., Phoenix, for respondent.

## OPINION

NELSON, Judge.

On this review of an Industrial Commission award, we are called upon to determine whether the employer in question was subject to the provisions of the Arizona Workmen's Compensation Act because she had three or more workers in her employ.

Charlotte Hughes (Hughes), the petitioner herein, was employed as a receptionist by Alice Nedelec d. b. a. Alice's House of Real Estate (Alice's). Hughes alleged that she sustained an industrial injury which resulted in the amputation of the right ring finger and other injuries to the right hand. At the time of the incident, Alice's was not insured under the Arizona Workmen's Compensation Law.

While Alice's carried no workmen's compensation coverage, the law is clear that if three or more workmen are employed, the Act comes into operation. Respondent Industrial Commission has argued that the real estate salesmen associated with Alice's were correctly characterized as independent contractors rather than employees. This classification of the salesmen allows the employer to invoke one of the exceptions to coverage under the Work-

men's Compensation Act. A.R.S. § 23–902 (C). The applicable statutory provisions are A.R.S. § 23–902 (B) and (C):

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

"C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section."

 The right to control the method of reaching a desired result is the governing aspect in determining whether an individual is an employee or independent contractor. *El Dorado Insurance Company v. Industrial Commission,* 25 Ariz.App. 617, 545 P.2d 465 (1976); *Reed v. Industrial Commission,* 23 Ariz.App. 591, 534 P.2d 1090 (1975). It is not the exercise of the power to supervise and control, but rather its existence which is to be considered. *Scott v. Rhyan,* 78 Ariz. 80, 275 P.2d 891 (1954); *Industrial Commission v. Meddock,* 65 Ariz. 324, 180 P.2d 580 (1947).

After the Industrial Commission hearing, the hearing officer found that Hughes offered no evidence as to whether the defendant employer retained supervision or control of the work performed by the three commissioned salesmen and whether their work was part of the trade or business of the employer. It was further found that there was insufficient evidence from which to draw a reasonable inference or to establish the exact nature of the relationship between the named employer and the salesmen as independent contractors or employees. In essence, the hearing officer found that Hughes had failed to sustain her burden of proof.

We disagree with the conclusions of the hearing officer that Alice's was not subject to the provisions of A.R.S. § 23–902 and A.R.S. § 23–901, and that the Commission was without jurisdiction to grant relief.

Hughes contends that the rules of the Real Estate Commission and the Arizona Revised Statutes pertaining to the licensing of brokers and salesmen (see A.R.S. §§ 32–2101 et seq.) support her position that a real estate salesman is under the complete control of the broker. It is further urged that a reading of the statute precludes a finding that a real estate salesman is an independent contractor.

 To sustain her argument, petitioner cites *Faith Realty and Development Company v. Industrial Commission of Colorado,* 170 Colo. 215, 460 P.2d 228 (1969). We believe that the case supports Hughes' contention that real estate salesmen are employees and not independent contractors. In the *Faith Realty* case, reliance was placed upon the Colorado Real Estate Brokers and Salesmen License Law. Recognizing that protection of the public was the main goal of the Act, the court stated:

"To accomplish that purpose the Act, we think, envisions an employer-employee relationship because it clothes the broker not only with the right to control his salesmen but it also charges him with a duty to do so." C.R.S.1963, 117–1–5(5). 170 Colo. at 220, 460 P.2d at 230.

The Arizona courts have also cited protection of the public as being the underlying purpose of the state's real estate law.

*Bonasera v. Roffe*, 8 Ariz.App. 1, 442 P.2d 165 (1968). ·

Specific elements of the Colorado Real Estate statute were relied on in the *Faith Realty* case, supra. We find the analogous portions of the Arizona Real Estate statute to be relevant here: (1) a broker must retain the license of each salesman he employs (A.R.S. § 32–2128, C.R.S.1963, 117–1–6); (2) the license should be returned to the Commissioner when the licensee leaves his employ (A.R.S. § 32–2128, C.R.S.1963, 117–1–7); (3) the license of a broker or salesman is subject to revocation if the licensee represents or attempts to represent without consent, a real estate broker other than his employer (A.R.S. § 32–2153A(12), C.R.S.1963, 117–1–12(f)). In addition to the parallel requirements listed above, A.R.S. § 32–2155A states that a broker shall employ and pay only legally licensed salemen, and salesmen shall accept employment and compensation as such only from legally licensed brokers.

The facts apparently relied on by the hearing officer in Hughes' case to establish the relation of an independent contractor are: (1) all of the salesmen working out of respondent employer's office were paid strictly on a commission basis after a sale had been consummated; (2) no salesmen received an advancement on future anticipated commissions; (3) withholding taxes were not deducted from the salesman's earned commissions by respondent employer. These (and other) factors were also in existence in the *Faith Realty* case, but were not found to be determinative of the relationship between the defendant and its real estate salesmen.

While there is a split of authority as to the classification of real estate salesmen as employees versus independent contractors [1], we feel that the better view is that followed by the Colorado court. The state real estate laws, a statutory scheme designed for the protection of the public, are the most convincing evidence of the right to control. As stated previously, it is the right to control, rather than the exercise of that right, that is decisive. *Scott v. Rhyan*, supra; *Industrial Commission v. Meddock*, supra. Here there was specific testimony by Alice Nedelec, the respondent employer, that she *supervised* the real estate salesmen. This too is evidence of both the right to control and the exercise of that right.

In attempting to answer the question of whether real estate salesmen are employees for the purpose of Workmen's Compensation Acts, courts have frequently looked to cases dealing with this topic in the area of unemployment insurance. Hughes cites the case of *See Ben Realty Co. v. Employment Security Commission*, 416 P.2d 220 (Wyo. 1966) wherein the Supreme Court of Wyoming held that the occupation of real estate salesman was to be classified as that of an employee for purposes of the unemployment compensation act. The Employment Security Law was deemed to be in pari materia with the Real Estate Brokers and Salesmen Act. The Arizona Supreme Court has determined that real estate salesmen were employees under the Employment Security Act of Arizona. *McClain v. Church*, 72 Ariz. 354, 236 P.2d 44 (1951) [2].

---

1. · Contra, *Florida Industrial Commission v. Schoenberg*, 117 So.2d 538 (Fla.App.1960), a case holding that real estate salesmen are independent contractors rather than employees provides a careful analysis of the position of various jurisdictions on the issue presented in the instant case. There the court rejected the contention that references to salesmen as employees under the real estate licensing statutes of the state are determinative of the status of a real estate salesman.

2. While the analysis in *McClain* centered upon the definition of the term "wages", it is instructive on the issue involved here. It must, however, be noted that the statute was

See also *Graham v. Miera,* 59 N.M. 379, 285 P.2d 493 (1955).

■ We hold that the Arizona Real Estate statutes pertaining to the licensing of real estate brokers and salesmen are sufficient evidence of the right to control so as to necessitate the classification of real estate salesmen as employees rather than independent contractors for purposes of the Workmen's Compensation Act.

The award of the Industrial Commission is set aside.

HAIRE, Chief Judge, Division 1, and WREN, J., concur.

---

amended to specifically exclude real estate salesmen from the Employment Security Act in 1947. The operative facts in the case were governed by the law in force prior to the amendment.