251 P.3d 411

Leticia CARNES, surviving spouse of Wesley James Carnes, Jr., deceased, individually and on behalf of Wesley James Carnes, III, and Adam Everett Carnes, surviving adult children of Wesley James Carnes, Jr., deceased, Plaintiff/Appellant,

v.

PHOENIX NEWSPAPERS, INC., an Arizona corporation, Defendant/Appellee.

No. 1 CA–CV 09–0365.

Court of Appeals of Arizona, Division 1, Department B.

April 7, 2011.

**34**

Jones, Skelton & Hochuli, P.L.C. By J. Gary Linder, Jennifer A. Baker, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 Plaintiff Leticia Carnes appeals the summary judgment entered in favor of Defendant Phoenix Newspapers, Inc. ("PNI"). The trial court determined that newspaper delivery person Stephanie Sebastian was not acting within the scope of her employment with PNI as she drove her vehicle home after finishing her deliveries. Carnes urges us to adopt the "employee's own conveyance rule" or to otherwise find a question of fact precluding summary judgment. For the following reasons, we decline to adopt the "employee's own conveyance rule" and we agree with the trial court that PNI is entitled to summary judgment. We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 From December 2003 until October 2006, Sebastian delivered newspapers for PNI. Sebastian had three delivery routes and typically finished delivering papers between six and seven in the morning. PNI required that its delivery persons use their own vehi-

cles to pick up and deliver the newspapers. PNI provided them with a "soft book"—an electronic device that stores the delivery person's route information, notes from past work days, and notes from supervisors.

¶ 3 On the morning of October 20, 2006, Sebastian had finished her deliveries and was driving home when she collided with a bicycle ridden by Carnes' husband, Wesley Carnes. Mr. Carnes died as result of injuries sustained in the collision. According to Sebastian, she had delivered the last newspaper on her route approximately fifteen minutes before the accident. She was completely finished delivering newspapers for the day and did not believe she was engaged in any activity related to her work with PNI. The accident occurred about one mile from her home.

¶ 4 Plaintiff Carnes, as surviving spouse of Mr. Carnes and on behalf of his two surviving adult children, filed a wrongful death action against Sebastian and PNI. The complaint alleged that Sebastian negligently operated her vehicle, causing the collision with Mr. Carnes. The complaint also alleged that PNI was vicariously liable for Sebastian's negligence because Sebastian "was an agent, servant and/or employee of [PNI] and, was acting within the course, scope, purpose and authority of said relationships" when the accident occurred.

¶ 5 PNI filed a motion for summary judgment, arguing that, in accordance with the "going and coming rule," PNI was not vicariously liable for the negligence of Sebastian because she was traveling home from work when the accident occurred. The trial court agreed that the case was controlled by the going and coming rule and granted PNI's motion for summary judgment.

¶ 6 The trial court entered final judgment in favor of PNI, and the judgment included language from Arizona Rule of Civil Procedure 54(b). Carnes appeals. We have jurisdiction pursuant to Arizona Revised Statutes section 12–2101(B) (2003).

## ANALYSIS

¶ 7 Summary judgment is proper when there are no genuine issues of material fact

and the moving party is entitled to a judgment as a matter of law. Ariz. R. Civ. P. 56(c)(1). When reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 496, ¶ 2, 88 P.3d 565, 566 (App.2004). We determine de novo whether any genuine issues of material fact exist and whether the trial court correctly applied the law. *Mein v. Cook*, 219 Ariz. 96, 98, ¶ 9, 193 P.3d 790, 792 (App.2008).

### Respondeat Superior and the "Going and Coming Rule"

¶ 8 Carnes challenges the summary judgment granted to PNI. She argues that PNI is vicariously liable for Sebastian's alleged negligence under "general principles of respondeat superior" and under the "employee's own conveyance rule," an exception to the going and coming rule.

¶ 9 In Arizona, an employer may be held vicariously liable on the theory of respondeat superior for negligent driving of a vehicle by its employee if the facts establish an employer-employee relationship and the negligence of the employee occurred during the scope of her employment. *State v. Superior Court (Schraft)*, 111 Ariz. 130, 132, 524 P.2d 951, 953 (1974) (citing *Hansen v. Oakley*, 76 Ariz. 307, 312, 263 P.2d 807, 810 (1953)). The parties agree for purposes of PNI's motion for summary judgment and this appeal that Sebastian may be considered PNI's employee rather than an independent contractor.[1] The question we must resolve is whether Sebastian was acting within the scope of her employment with PNI at the time of the accident.

¶ 10 An employee's conduct is within the scope of employment if (1) the conduct is the kind the employee is employed to perform, (2) the conduct is substantially within the authorized time and space limits, and (3) the conduct is actuated, at least in part, by a purpose to serve the employer.

*Anderson v. Gobea*, 18 Ariz.App. 277, 280, 501 P.2d 453, 456 (1972). In tort actions arising out of vehicular accidents, our supreme court has explained that a "basic test" to determine applicability of respondeat superior is whether the employee is "subject to the employer's control or right to control" at the time of the negligent driving. *Schraft*, 111 Ariz. at 132, 524 P.2d at 953 (quoting *Throop v. F.E. Young & Co.*, 94 Ariz. 146, 382 P.2d 560 (1963), and *Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 65 P.2d 35 (1937), *declined to follow on other grounds by Tarron v. Bowen Machine & Fabricating, Inc.*, 225 Ariz. 147, 235 P.3d 1030 (2010)). Similarly, this court has recognized that, in motor vehicle accident cases, "scope of employment" is "tied to the employer's right to control the employee's activity" at the time of the tortious conduct. *Robarge v. Bechtel Power Corp.*, 131 Ariz. 280, 283, 640 P.2d 211, 213 (App.1982) (quoting *Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761, 764 (Alaska 1973), *superseded on other grounds by statute as stated in Petrolane Inc. v. Robles*, 154 P.3d 1014, 1020 n. 18 (Alaska 2007)). At the time of the accident, in other words, "the employee must be subject to the employer's control or right of control." *Robarge*, 131 Ariz. at 284, 640 P.2d at 214.

¶ 11 Because an employee is usually not subject to the employer's control or right of control when commuting to or from work, our supreme court has adopted the "going and coming rule." *See Schraft*, 111 Ariz. at 132, 524 P.2d at 953. Under the rule, "an employer is not liable for the tortious acts of his employee while the employee is going to or returning from his place of employment." *Id.*

¶ 12 The evidence is uncontroverted that Sebastian was returning home after finishing her deliveries for the day when the accident occurred. She considered herself finished with her shift after she delivered her last newspaper, and she did not think PNI had the ability to control her conduct once she finished work. Although the driver's testi-

---

1. *Cf. Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 509, 794 P.2d 138, 142 (1990) (explaining factors to consider in determining whether a newspaper delivery person is an employee or independent contractor).

mony is not necessarily conclusive on the issue of control, there is nothing in the record demonstrating that Sebastian was subject to PNI's "control or right of control" at the time of the accident. She was not required to go home—she could have driven anywhere she wanted. Carnes contends that the "soft book" in Sebastian's car was used by PNI as a "control tool." She does not, however, explain how this device could be used by PNI to control the actions of Sebastian once she was finished with her deliveries and free to go home or wherever she might choose. Similarly, Carnes asserts that PNI discharged Sebastian after the accident, thereby evidencing its "control" over her. We are not persuaded, however, that the termination establishes that PNI had control or the right of control after her newspaper deliveries were completed.

¶ 13 Citing *Ray Korte Chevrolet v. Simmons*, 117 Ariz. 202, 571 P.2d 699 (App.1977), Carnes further argues that PNI is vicariously liable because Sebastian's drive to and from work was contemplated by PNI and incidental to her employment as a newspaper delivery person. Carnes emphasizes this court's explanation in *Simmons* that:

> an employee is acting within the scope of his employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or *which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment.*

*Id.* at 207, 571 P.2d at 704 (emphasis added). *Simmons* is distinguishable. The evidence in *Simmons* was sufficient to support a jury finding that the accident happened when the employee was traveling from the Ray Korte premises to pick up a customer and return to the showroom. *Id.* The going and coming rule was not applicable under the facts of

*Simmons,* and the above-quoted language from *Simmons* is not persuasive here.

¶ 14 The trial court correctly determined under Arizona law that this case is governed by the going and coming rule and Sebastian was not in the scope of her employment with PNI at the time of the accident.

## The "Employee's Own Conveyance Rule"

 ¶ 15 Carnes alternatively urges us to apply, in this tort action, a workers' compensation principle variously called the "employee's own conveyance rule," "own conveyance rule," or "required vehicle" exception. The employee's own conveyance rule originated in workers' compensation cases and operates as an exception to the going and coming rule. It provides that "[i]f the employee as part of his or her job is required to bring along his or her own car, truck or motorcycle for use during the working day, *the trip to and from work is by that fact alone embraced within the course of employment.*" Arthur Larson & Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 15.05[1], at 15–14 (2009) (emphasis added).

¶ 16 We initially note, and the parties agree, that the employee's own conveyance rule has not been explicitly adopted or applied by Arizona courts in tort cases.[2] In evaluating the potential application of the employee's own conveyance rule, we first examine certain differences between workers' compensation and tort law. Then we consider whether the employee's own conveyance rule is consistent with Arizona law regarding the determination of respondeat superior liability when an employee has an accident driving to or from work.

 ¶ 17 Although "there are instances when [workers' compensation] principles are particularly apropos and can be invoked" in

**2.** Carnes argues, however, that similar principles have been embraced in Arizona workers' compensation cases. *See Harris v. Indus. Comm'n,* 72 Ariz. 197, 198, 232 P.2d 846, 847 (1951) (stating that a "widely accepted and well-known exception" to the going and coming rule exists when "the work is of such a nature that it creates the necessity of travel on the part of the employee, or where the employer compensates the employee for travel to and from work"); *Martin v.*

*Indus. Comm'n,* 73 Ariz. 401, 405, 242 P.2d 286, 289 (1952) (explaining that because "Martin's employment created the necessity for travel, he comes within the rule stated in *Harris* "). We need not evaluate whether the employee's own conveyance rule is established in our workers' compensation law, however, because we do not find the rule to be applicable in a tort action to impose respondeat superior liability.

tort cases, *see Anderson*, 18 Ariz.App. at 280, 501 P.2d at 456, "the rules adopted for work[er]s' compensation cases should not be mechanically applied in negligence cases." *Robarge*, 131 Ariz. at 283, 640 P.2d at 213. "In deciding whether or not an employee is within the scope of his employment in a tort case, as opposed to a workmen's compensation case, *the doctrine of respondeat superior is the standard* against which that determination shall be made, and other concepts borrowed from the area of workmen's compensation law can be considered but will not be controlling." *Id.* at 284, 640 P.2d at 214 (emphasis added). The reason workers' compensation law is not controlling in a tort action is that workers' compensation law and respondeat superior serve different purposes and, therefore, differ in scope and application. *See id.* at 283, 640 P.2d at 213.

¶ 18 The purpose of workers' compensation statutes is to shift the burden of loss attributed to work-related accidents from the individual employee and "place the burden of injury upon the industry and the community as a whole." *Hannon v. Indus. Comm'n*, 9 Ariz.App. 231, 232, 451 P.2d 44, 45 (1969). In workers' compensation cases, the employer's responsibility is limited to the employees, and workers' compensation benefits turn on whether the employee was injured while performing a work-related activity. *See Robarge*, 131 Ariz. at 283, 640 P.2d at 213. The test of work-relatedness in workers' compensation cases focuses on whether the accident arose out of and in the course of employment. *See Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, 381, ¶ 8, 214 P.3d 1019, 1022 (App.2009).

¶ 19 On the other hand, the doctrine of respondeat superior encourages employers to supervise their employees to discourage tortious conduct by requiring employers to compensate victims injured by the tortious acts of employees within the scope of employment. An employer's vicarious liability under the doctrine of respondeat superior extends to an indeterminate number of people and is not limited to employees and their dependents as is worker's compensation. To impose respondeat superior liability requires the narrower scope-of-

employment test instead of the broader work-related test from workers' compensation. *See Robarge*, 131 Ariz. at 283–84, 640 P.2d at 213–14.

¶ 20 Because of the differences between workers' compensation and the tort system, we are not persuaded by workers' compensation principles that the employee's own conveyance rule should be applied as an exception to the going and coming rule in tort actions.

¶ 21 We also conclude that the employee's own conveyance rule is inconsistent with Arizona law regarding the determination of respondeat superior liability when an employee has an accident driving to or from work. The going and coming rule recognizes that employers generally do not have control or the right of control over their employees traveling to and from their work. *See supra* ¶¶ 10–12. To adopt the employee's own conveyance rule for respondeat superior determinations would alter Arizona law by eviscerating the importance of control or right to control and over-emphasizing the importance of the benefit to the employer. Application of the rule would result in an expansion of employers' liability—inconsistent with present Arizona law—by making employers responsible for their employees' actions even when the employers have no control or right of control over the employees.

¶ 22 We acknowledge there is a benefit to PNI in having delivery people provide their own vehicles for use in delivering newspapers. This factor, however, does not outweigh the absence of control or right of control by PNI over drivers such as Sebastian when they are traveling to and from work. *See supra* ¶¶ 11–12.

¶ 23 Citing *Largey v. Intrastate Radiotelephone, Inc.*, 136 Cal.App.3d 660, 186 Cal. Rptr. 520 (1982), Carnes argues that courts in other states have held that requiring use of a private vehicle imposes vicarious liability on the employer for acts of the employee while driving to and from work. In *Largey*, the California Court of Appeal stated that "[i]f it is an implied or express condition of his employment that the employee use his vehicle in attending to his duties, then the

employer will be vicariously liable for any accident incurred while the employee is driving to or from work." *Id.* at 524. We decline to follow California's lead on this issue, however, because the doctrine of respondeat superior in California is based substantially on the concept of enterprise liability. *See id.* at 525–26; *Huntsinger v. Glass Containers Corp.*, 22 Cal.App.3d 803, 99 Cal.Rptr. 666, 669 (1972). In contrast, the respondeat superior inquiry in Arizona focuses primarily on whether the employer maintained control or right of control over the employee during the commute to or from work. *See Schraft,* 111 Ariz. at 132–33, 524 P.2d at 953–54; *Robarge,* 131 Ariz. at 284–85, 640 P.2d at 215–16; *Faul v. Jelco, Inc.,* 122 Ariz. 490, 492–93, 595 P.2d 1035, 1037–38 (App.1979) (recognizing California's "risk justification" for respondeat superior compared to Arizona's "control justification").[3] We therefore decline to follow *Largey.*

## CONCLUSION

¶ 24 Sebastian was returning home after finishing her newspaper route when this accident occurred, and PNI did not have control or right of control over her at that time. The going and coming rule is applicable and we decline to adopt the employee's own conveyance rule in this tort action. The trial court correctly determined that Sebastian was not acting within the scope of her employment with PNI at the time of the accident and PNI is not vicariously liable for Sebastian's actions under the respondeat superior doctrine. We affirm the summary judgment in favor of PNI.

CONCURRING: PATRICIA K. NORRIS, and MAURICE PORTLEY, Judges.

---

**3.** Our research suggests that most courts in other states, when deciding if the employee's own conveyance rule will be applied in tort cases, have declined to do so. *See, e.g., Stokes v. Denver Newspaper Agency, LLP,* 159 P.3d 691, 696 (Colo. App.2006); *Lessard v. Coronado Paint & Decorating Ctr., Inc.,* 142 N.M. 583, 168 P.3d 155, 164 (Ct.App.2007); *Oaks v. Connors,* 339 Md. 24, 660 A.2d 423, 427–28 (1995); *Beard v. Seamon,* 175 So.2d 671, 675 (La.Ct.App.1965). *But see Carter v. Reynolds,* 175 N.J. 402, 815 A.2d 460, 467–68 (2003); *Largey,* 186 Cal.Rptr. at 524. Our conclusion, however, is based on our analysis of Arizona cases and principles.